IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MARCOS ANDRES PICO,

        Plaintiff,

        v.

SHARI COOKE, MICHELLE
KESSINGER, KARON STANEK,
STEVEN RYAN, TRISH DAVENPORT,
JANET NORTON, CATERINE
THOMPSON, JON HYDE, and JOSHUA
HIGHBERGER, sued in their individual
and official capacities,

        Defendants.

**Civ. No. 6:23-cv-00287-MC**

**OPINION AND ORDER**

_____

**MCSHANE, Judge**:

       Plaintiff Marcos Andres Pico, an adult in custody ("AIC") within the Oregon Department

of Corrections ("ODOC"), brings a civil rights claim against Defendants under 42 U.S.C. § 1983.

Pl.'s Compl., ECF No. 2. Plaintiff's claim is based on instances of alleged retaliation that

occurred while he was incarcerated at Oregon State Correctional Institution ("OSCI").

Specifically, he claims that his reports of misconduct resulted in a retaliatory transfer of his

housing from OSCI to Two Rivers Correctional Institution ("TRCI"). Defendants move for

summary judgment on all claims. Defs.' Mot. Summ. J., ECF No. 27. For the reasons discussed

below, Defendants' Motion for Summary Judgment (ECF No. 27) is GRANTED in part and

DENIED in part.

## BACKGROUND[1]

Plaintiff was originally housed at TRCI but was transferred to OSCI in March 2018 after his acceptance into an Oregon Corrections Enterprises ("OCE") work program. OCE operates a call center with Oregon Driver and Motor Vehicles Services ("DMV") which allows inmates to live and work at OSCI. Defs.'Mot. 2–3. Plaintiff's DMV contract required him to work for at least 18 months, and if he did not complete his contract, he would be sent back to TRCI. Ryan Decl. Ex. 5, at 2, ECF No. 29.

In his time at OSCI, Plaintiff was supervised by Defendant Cooke, the Lead Tech at OCE; Defendant Stanek, an OSCI Unit Manager; Defendant Kessinger, an OCE Production Manager; Defendant Ryan, an OCE General Manager; Defendant Davenport, an ODOC Correctional Rehabilitation Manager; Defendant Norton, an ODOC Education and Training Manager; Defendant Thompson, an ODOC Correctional Counselor; Defendant Hyde, an ODOC Group Living Captain; and Defendant Highberger, the ODOC Superintendent. Compl. ¶¶ 4–12. Beginning in 2019, Plaintiff alleges he experienced workplace harassment by Cooke, Stanek, and Kessinger, including sexual harassment and discrimination. *Id.* ¶¶ 14, 30. Among these allegations, Plaintiff alleges that Cooke harassed him twice while he was using the restroom. Pl.'s Resp. 5, ECF No. 31. Plaintiff described the incidents in a voicemail to the Inspector General hotline:

> Back in October of 2019 Ms. Cook had been standing outside the bathroom waiting for me…Ms. Cook told me 'Pico, how many times are you going to flush the toilet, what's wrong is it that small you weren't able to find it?'…I contacted PREA at that time…On July 2020 Ms. Cook was again standing outside of the restroom right next to an inmate, and in a mocking harassing way she asked me after I got-out of the restroom… 'Why are you taking so long inside the restroom, were you touching yourself?'…

---

[1] The Court views the facts in the light most favorable to Plaintiff, the non-moving party.

Pl.'s Resp. 5; Pl.'s Resp. Ex. B at 1–2.

Plaintiff reported the workplace harassment in a kyte to Hyde. Compl. ¶ 20. In December

2020, Plaintiff reported that "he could no longer tolerate the repeated workplace harassment and

discrimination as well as the policy violations by staff." *Id.* ¶ 14. Plaintiff alleges that in response

to this complaint, Cooke told him "that if he continued to report episodes of workplace

harassment, discrimination, or policy violations by staff," he would be transferred back to TRCI.

*Id.* ¶ 15. Plaintiff expressed wanting to change jobs due to the harassment. *Id.* ¶ 16. In response,

Cooke allegedly threatened that "[she], Stanek, Kessinger, and Ryan would do everything in

their power to punish [him] by having him transferred to TRCI." *Id.* ¶ 17.

In December 2020, Plaintiff resigned from his job at the DMV. Defs.' Mot. 4. He later

accepted a position at OSCI's greenhouse, which prison officials agreed he could do as long as

he was housed at OSCI.  Compl. ¶¶ 16, 27; Defs.' Mot. 4. Plaintiff sought reassurance that he

would not experience retaliation for quitting his DMV job. Compl. ¶¶ 24, 26. On January 20,

2021, Thompson responded to Plaintiff's concerns about retaliation, stating:

> You may take the garden job now that your contract has ended without penalty
> from DMV. However a garden job will not hold you at OSCI. With your Life
> sentence, once you are no longer in a hold position, you will [be] returned for
> transfer to a more appropriate long-term facility. All transfers are reviewed on a
> case by case basis.

Compl. ¶ 25.

Plaintiff's resignation from the DMV became effective on January 22, 2021, and a few

days later, a prison official submitted a request to transfer Plaintiff. Defs.' Mot. 5. As a result of

the alleged harassment and subsequent transfer, Plaintiff made two PREA complaints, sent kytes

to prison officials, filed grievances, and requested review of his transfer to TRCI for a retaliatory

3 – OPINION AND ORDER

motive. Pl.'s Resp. Ex. O, at 1–8; Pl.'s Resp. Ex. P, at 1. Plaintiff was transferred to TRCI on

February 23, 2021. Compl. ¶ 31.

## STANDARDS

The Court must grant summary judgment if there is no genuine issue of material fact and

the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). An issue is

"genuine" if a reasonable jury could return a verdict in favor of the non-moving party. *Rivera v.*

*Phillip Morris, Inc.*, 395 F.3d 1142, 1146 (9th Cir. 2005) (citing *Anderson v. Liberty Lobby, Inc.*,

477 U.S. 242, 248 (1986)). A fact is "material" if it could affect the outcome of the case. *Id.* The

court reviews evidence and draws inferences in the light most favorable to the non-moving party.

*Miller v. Glenn Miller Prods., Inc.*, 454 F.3d 975, 988 (9th Cir. 2006) (quoting *Hunt v.*

*Cromartie*, 526 U.S. 541, 552 (1999)). When the moving party has met its burden, the non-

moving party must present "specific facts showing that there is a genuine issue for trial."

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87.

## DISCUSSION

### I.    § 1983 First Amendment Retaliation

Plaintiff alleges that Defendants violated his First Amendment rights by retaliating

against him for engaging in protected activities, such as filing grievances and reporting

harassment and misconduct by OCE and ODOC employees. Compl. ¶¶ 14–18.

To prevail on a First Amendment Retaliation claim, a plaintiff must show that (1) prison

officials took adverse action against the inmate; (2) the adverse action was taken because the

inmate (3) engaged in protected conduct; (4) the adverse action chilled the inmate's exercise of

his First Amendment rights; and (5) the adverse action did not serve a legitimate correctional

goal. *Rhodes v. Robinson,* 408 F.3d 559, 567–68 (9th Cir. 2005). In determining whether speech has

been chilled, a court must determine "whether an official's acts would chill or silence a person of ordinary firmness from future First Amendment activities." *Mendocino Envtl. Ctr. v. Mendocino Cnty*, 192 F.3d 1283, 1301 (9th Cir. 1999) (quoting *Crawford–El v. Britton,* 93 F.3d 813, 826 (D.C. Cir. 1996), *vacated on other grounds*, 520 U.S. 1273 (1997) (internal quotation marks and citation omitted)). Thus, a plaintiff may perfect a claim of First Amendment retaliation by alleging that "his First Amendment rights were chilled, though not necessarily silenced." *Rhodes*, 408 F.3d at 569.

## A. Defendant Davenport

Davenport is the only defendant who was personally involved in Plaintiff's transfer from OSCI to TRCI. Plaintiff argues that he was transferred because he complained about harassment and quit his DMV job. Compl. ¶ 16; Pl.'s Resp. 8. Defendants deny this and argue that Davenport applied a neutral policy when approving Plaintiff's transfer. Defs.' Mot. 8.

Defendants argue that Plaintiff's transfer was based on the application of a neutral institutional policy, facility needs, and the legitimate correctional goal of "rehabilitation for the AICs involved." *Id.* Defendants do not provide the policy, but state that AICs are returned to their sending facility after completion of a job at OSCI and that "absent some exception, AICs serving life sentences are housed at long-term facilities." Davenport Decl. 3, ECF No. 27; Defs.' Mot. 4. Prison officials also noted that "[a]ll transfers are reviewed on a case by case basis." Pl.'s Resp. Ex. H, at 1.

Plaintiff alleges that other AICs quit or were fired from their DMV jobs without being transferred from OSCI. Compl. ¶ 35; Pl.'s Resp. 8. Assuming Plaintiff's allegations are true and other AICs were permitted to remain at OSCI despite losing their DMV jobs, there is a question of fact as to whether Plaintiff's transfer was retaliatory.

5 – OPINION AND ORDER

At this stage, Plaintiff has alleged sufficient facts against Davenport. Defendants' Motion is denied as to Davenport.

## B. Defendant Cooke

Plaintiff alleges that Cooke threatened to transfer him if "he continued to report episodes of workplace harassment, discrimination, or policy violations by staff" and that she threatened that "[she], Stanek, Kessinger, and Ryan would do everything in their power to punish [him] by having him transferred." Compl. ¶¶ 15, 17.

While supervisory liability is generally not cognizable under § 1983, the Ninth Circuit recognizes supervisor liability for the following:

> (1) for setting in motion a series of acts by others, or knowingly refusing to terminate a series of acts by others, which they knew or reasonably should have known would cause others to inflict constitutional injury; (2) for culpable action or inaction in training, supervision, or control of subordinates; (3) for acquiescence in the constitutional deprivation by subordinates; or (4) for conduct that shows a "reckless or callous indifference to the rights of others.

*Moss v. U.S. Secret Serv.*, 675 F.3d 1213, 1231 (9th Cir. 2012), *rev'd on other grounds sub nom. Wood v. Moss*, 572 U.S. 744 (2014). In other words, a supervisor may be found liable if there is "a sufficient causal connection between the supervisor's conduct and the constitutional violation." *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011).

Plaintiff made complaints about the harassment through kytes, PREA complaints, formal grievances, and ultimately quit his job due to the harassment. A plaintiff's speech need not be entirely silenced in order to be chilled, and Plaintiff expressed being afraid of complaining because of "the type of retaliation … I'm currently experiencing," and he "decided not to tell." Pl.'s Resp. Exhibit B, at 8. Plaintiff further alleges that he made two PREA complaints against Cooke, and she then "told another inmate that [he] had put in a PREA complain (sic) against her, and that created a security threat." *Id.*

6 – OPINION AND ORDER

Although Cooke did not personally sign Plaintiff's transfer, there is a question of fact as to whether Cooke set the transfer in motion. Cooke's alleged threats, if true, creates a factual dispute about her involvement in his transfer. At this stage, Plaintiff has alleged sufficient facts for a claim of supervisor liability against Cooke. Defendants' Motion is denied as to Cooke.

**C. Defendants Kessinger, Stanek, Ryan, Norton, Thompson, Hyde, and Highberger**

Although Defendants Kessinger, Stanek, Ryan, Norton, Thompson, Hyde, and Highberger interacted with Plaintiff in their roles as ODOC and OCE employees, they did not personally participate in the decision to transfer Plaintiff. Plaintiff instead alleges liability based on their supervisory roles within the institution. *See* Compl. ¶ 3–13. It is well settled that *respondeat superior* is not a proper basis for liability under 42 U.S.C. § 1983. *Monell v. Dept. of Soc. Servs. of City of New York,* 436 U.S. 658, 691–694 (1978); *Rizzo v. Goode,* 423 U.S. 362, 375–76 (1976); *King v. Ativeh,* 814 F.2d 565, 568 (9th Cir.1987). To establish a § 1983 claim against an individual defendant, a plaintiff must establish personal participation by the defendant in the alleged constitutional deprivation. *Ashcroft v. Iqbal,* 129 S.Ct. 1937 (2009).

Because Plaintiff failed to allege sufficient facts to support supervisory liability and none of the categories the Ninth Circuit recognizes have been met, Defendants' Motion as to Kessinger, Stanek, Ryan, Norton, Thompson, Hyde, and Highberger is granted.

//

//

//

//

//

//

## CONCLUSION

For these reasons, Defendants' Motion for Summary Judgment (ECF No. 27) is

GRANTED in part and DENIED in part, consistent with this opinion. Plaintiff's Motion for

Appointment of Counsel (ECF Nos. 34, 36, and 43) is GRANTED. All other pending motions

are stayed.

IT IS SO ORDERED.

DATED this 10th day of May, 2024.

_____s/Michael J. McShane_____
**Michael J. McShane**
**United States District Judge**